IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SARAI N. MILLER, | ) |
| | ) |
|               **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. CIV-20-218-SPS |
| | ) |
| KILOLO KIJAKAZI, | ) |
| **Acting Commissioner of the Social** | ) |
| **Security Administration,**[1] | ) |
| | ) |
|               **Defendant.** | ) |

## OPINION AND ORDER

The claimant Sarai N. Miller requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human*

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was thirty-eight years old at the time of the administrative hearing (Tr. 35). She completed the ninth grade and has worked as a telemarketer, short-order cook, and cashier/checker (Tr. 60). The claimant alleges she has been unable to work since January 4, 2015, due to depression and/or bipolar disorder, general anxiety disorder, severe complex trauma, moderate to severe rheumatoid arthritis, insomnia, and PTSD (Tr. 260).

## Procedural History

On August 23, 2017, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on August 28, 2017. Her applications were denied. ALJ Michael E. Finnie conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated June 24, 2019 (Tr. 12-23). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform less than a full range

of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently, sit for six hours in an eight-hour workday, and stand/walk six hours in an eight-hour workday; that she could only frequently handle and finger and only occasionally climb ramps/stairs, kneel, and crouch; and that she could never climb ladders/ropes/scaffolds.  Finally, he limited her to simple routine tasks learned by rote or short demonstration with simple instructions, few workplace changes, little judgment required, and simple and direct supervision, as well as only *occasional* contact with the public and with coworkers (Tr. 15-16).  The ALJ thus concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *e. g.*, small products assembler, electronics worker, and hand packager (Tr. 21-22).

## Review

The claimant contends that the ALJ erred by:  (i) failing to properly evaluate the medical evidence related to her mental impairments, and (ii) failing to perform a proper consistency evaluation.  The Court agrees with the claimant's first contention.

The ALJ determined that the claimant had the severe impairments of degenerative disc disease spine, diabetes mellitus, rheumatoid arthritis, osteoarthritis, history of transient ischemic attack (TIA), obesity, hepatitis, affective disorder, bipolar disorder, anxiety disorder, and PTSD (Tr. 14). The relevant medical evidence as to the claimant's mental impairments reflects that she was treated at the Center for Psychological Development, where she was assessed with generalized anxiety disorder in May 2017 (Tr. 386).  She was

discharged against advice after missing three appointments (Tr. 821-822). She also received treatment for major depressive disorder and insomnia (Tr. 780-781).

On November 7, 2017, Dr. Peter Holm, MD, evaluated the claimant for complaints of depression and PTSD. The claimant reported that her longest period of employment had been eighteen months, and she has been fired from every job secondary to moodiness (Tr. 1115). She also reported that her depression alternated with her mania (Tr. 1116). Dr. Holm assessed the claimant with PTSD and bipolar disorder currently depressed with thought disorder symptoms (Tr. 1116). He noted that the claimant's mania was reduced from up to three days at a time to just a few hours every day (Tr. 1116). The claimant's prognosis was guarded, in light of continuing significant mood swings along with PTSD. Dr. Holm again noted the claimant's report that she had been fired from every job for mood swings, and he stated that she would have significant difficulty interacting with people and would have significant difficulty maintaining concentration and completing tasks (Tr. 1116).

Dr. Suzanne Castro, Psy.D., reviewed the record and found that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a *superficial* work basis, and adapt to a work situation, but that she cannot relate to the general public (Tr. 94). Upon reconsideration, Dr. Randy Cochran, Psy.D., reviewed the record and made the same findings (Tr. 130).

In his written opinion, the ALJ summarized the claimant's administrative hearing testimony, as well as the medical evidence of record. As relevant to this appeal, the ALJ summarized Dr. Holm's assessment and noted his conclusion that she would have

significant difficulty interacting with people, as well as maintaining concentration and completing tasks (Tr. 18-19). He further noted that the claimant missed three mental health appointments and was discharged from services in November 2017 but that she began seeking further mental health treatment in December 2019 (Tr. 19). In evaluating the evidence related to her mental impairments, the ALJ noted that the claimant alleged withdrawal from and avoidance of public or social settings, but somehow found her ability to communicate her medical history at appointments to contradict this evidence. He then stated, "Nonetheless, she may be irritated by constant or frequent contact with the public or coworkers." (Tr. 20). The ALJ then asserted that Dr. Holm's opinion was not persuasive as it was based on a one-time evaluation and the claimant's subjective statements and concluded that his opinion was not consistent with unspecified other evidence in the record (Tr. 21). He then found that the reviewing opinions of Dr. Castro and Dr. Cochran were persuasive and consistent with the record as a whole, stating that they informed the basis for the RFC.

The claimant first asserts that the ALJ erred in assessing her RFC. More specifically, she contends that the ALJ erred in limiting her to *occasional contact* with the public and with coworkers and simple and direct supervision, when Dr. Castro and Dr. Cochran both found that she could relate to supervisors and peers on a *superficial work basis* and *cannot* relate to the general public (Tr. 16, 94, 130). An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 96-8p, 1996 WL 374184, at *2 (July 2, 1996). It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms,

-6-

such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.*  This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b), 416.945(b).  Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record."  Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7.

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c.  Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary

requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Here, the ALJ erred in applying these factors when he appeared to equate "occasional" with "superficial." While the Tenth Circuit has not made a definitive ruling on this question, other courts have held that "'occasional' and 'superficial' are not coterminous." *Wood v. Commissioner of Social Security*, 2019 WL 1614591, at *3 (S.D. Ohio, April 16, 2019) (citing cases). "'Occasional contact' goes to the quantity of time spent with the individuals, whereas 'superficial contact' goes to the quality of the interaction." *Wartak v. Colvin*, 2016 WL 880945, at *7 (N.D. Ind. March 8, 2016) ("Perhaps the ALJ determined that a shift in the

frequency of contact would compensate for the depth of contact; but the ALJ does not say so, and there is no support for such a finding in the record.").

This error raises questions as to the claimant's RFC and brings into question the ALJ's step five findings. The Commissioner urges the Court to find that any error would be harmless because the jobs identified by the vocational expert ("VE") are rated "not significant" with regard to dealing with people. *See* DICOT §§ 706.684-022, 726.687-010, 549.687-074. But the VE's actual testimony was that a limitation to no contact with the general public and only infrequent contact with coworkers and supervisors, *i. e.*, "relatively isolated," would eliminate the jobs identified (Tr. 62-63). The error here is therefore not harmless. *See Wood*, 2019 WL 1614591, at *3 ("In finding Plaintiff not disabled, the ALJ relied on responses to hypotheticals he posed to the [VE] that only limited an individual to "occasional contact." Therefore, the ALJ failed to meet his burden at Step Five because the Court cannot discern whether the additional limitation -- to "superficial contact" -- would preclude substantial gainful employment in the national economy."). *See also Eveland v. Beryhill*, 2017 WL 3600387, at *5 (N.D. Ind. Aug. 22, 2017) ("This error is compounded because the hypotheticals to the [VE] did not include any limitation to 'superficial interaction' with supervisors and coworkers.") (*citing Wartak*, 2016 WL 880945, at *7).

The Court therefore finds that remand is appropriate. *Greene v. Saul*, 2020 WL 4593331, at *4 (N.D. Ind. Aug. 11, 2020) ("Because the ALJ in this case made no attempt to explain the basis for his decision to limit Mr. Greene to 'occasional interaction' rather than 'superficial interaction,' the ALJ failed to build an accurate logical bridge between

the evidence and the RFC. This failure warrants remand."). Because the ALJ failed to properly evaluate the opinions in the record as to the claimant's mental impairments, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 22nd day of September, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**